HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MARY K. McMILLAN,

    Plaintiff,

v.

ABBOTT LABORATORIES, INC. et al.,

    Defendants.

CASE NO. C10-1708 RAJ

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

## I.  INTRODUCTION

This matter comes before the court on a motion for summary judgment by defendants Abbott Laboratories Inc., dba Abbott Sales Marketing & Distribution Co., and Abbott Diabetes Care Sales Corporations (collectively, "Abbott" or "Defendants"). Dkt. # 22. Defendants move for summary judgment on the only claim against them: Age discrimination under the Washington Law Against Discrimination ("WLAD"), RCW 49.60. *Id.*; Dkt. # 1 at 15. Plaintiff Mary McMillan opposes the motion. Dkt. # 25.

Having considered the memoranda, exhibits, oral argument, and the record herein, the court GRANTS Defendants' motion for summary judgment.

## II. BACKGROUND

Mary "Kitty" McMillan began selling diabetes products in 1989, when she was 41 years old.[1] Dkt. ## 23 at 7 (McMillan Dep. 7:2–3); 29 (McMillan Dec.) ¶ 6. She began this career with Spokane Home Healthcare, and subsequently moved to Medisense, a startup company. Dkt. # 29 ¶ 6. She accepted a promotion to the Seattle area in 1994. *Id.* In 1995, Abbott bought Medisense, and Ms. McMillan became an Abbott employee. *Id.* In 2001 she left Abbott to work for Therasense, another startup company. *Id.* In 2003 or 2004, Abbott purchased Therasense, and Ms. McMillan once again became an Abbott employee. Dkt. ## 23 at 13 (McMillan Dep. 30:21–23); 29 ¶ 6.

Throughout her career, Ms. McMillan earned positive performance reviews and accolades. Dkt. # 29 ¶ 7. Ms. McMillan's annual performance review for 2007 was no different. *Id.* ¶ 8. Ms. McMillan's new district manager, Don Benedict, "had good things to say about [her]," finding that, overall, she "achieved expectations," the second highest level of performance. *Id.*; Dkt. # 23-2 at 17–28.

In late January 2008, regional manager Tita Forrest accompanied Ms. McMillan on three sales calls. Dkt. # 29 ¶ 10. Unbeknownst to Ms. McMillan, Ms. Forrest gave Mr. Benedict "negative feedback" regarding Ms. McMillan's performance. *Id.* In the Field Travel Coaching Form that Ms. Forrest completed, she wrote that Ms. McMillan "did not sell," and that Mr. Benedict would "have a lot of work to do" with Ms. McMillan. Dkt. # 23-2 at 13–14. Mr. Benedict told Ms. McMillan about the negative review in the spring of 2008, and from that point on Mr. Benedict made comments to Ms. McMillan that she found upsetting and believed were negative references to her age. Dkt. # 29 ¶¶ 10–11. Mr. Benedict "brought up his elderly aunt in a thinly veiled reference to [Ms. McMillan's] age," "suggested that the end was nigh and that [Ms. McMillan] should opt for early retirement," "made numerous remarks which implied that

---

[1] Ms. McMillan was born in 1948. Dkt. # 23 at 7 (McMillan Dep. 7:2–3).

[Ms. McMillan's] sales skills were old and that [she] was out of touch," and "commented that he had never seen a sales rep in an 'entry level' position making the salary [Ms. McMillan] was." *Id.* ¶¶ 11–12, 16. Ms. McMillan began receiving less favorable performance reviews, and on February 23, 2009, Mr. Benedict put Ms. McMillan on a 90-day performance improvement plan ("PIP"). Dkt. ## 24-8 at 2–5; 29 ¶ 18. Although the PIP bears Ms. McMillan's signature, she testified at her deposition that she never read it. Dkt. ## 23 at 79–80 (McMillan Dep. 292:21–295:2); 24-8 at 5.

On April 28 and 29, 2009, Mr. Benedict accompanied Ms. McMillan on her sales calls. Dkt. # 29 ¶ 22. Mr. Benedict's "verbal abuse and threats . . . escalated," and Ms. McMillan was "miserable." *Id.* Ms. McMillan's sales numbers had been improving, but Mr. Benedict "in effect told [her] that [she] was gone, no matter what [her] sales numbers showed, and no matter how hard [she] worked." *Id.* ¶¶ 18, 23. Plaintiff never reported Mr. Benedict's comments or behavior to anyone at Abbott. Dkt. # 23 at 77–78 (McMillan Dep. 285:21–286:6).

As a result of Mr. Benedict's comments, Ms. McMillan began experiencing "shortness of breath and chest pain," and contacted her medical provider. Dkt. # 29 ¶ 23. On May 1, 2009, Ms. McMillan saw Advanced Registered Nurse Practitioner (ARNP) Kitty Carmichael, who diagnosed Ms. McMillan as suffering from anxiety and depression. Dkt. # 26 (Carmichael Dec.) at ¶¶ 2–3. She instructed Ms. McMillan not to return to work until further testing was done. *Id.* ¶ 3.

Ms. McMillan testified in her deposition that on April 30, 2009, she called Matrix Absence Management, Inc. ("Matrix")[2] to request medical leave. Dkt. # 23 at 92 (McMillan Dep. 342:5–18). However, letters from Matrix and a document bearing Ms. McMillan's signature indicate that she did not contact Matrix until May 21st, at which

---

[2] Matrix is the outside company in charge of administering Abbott's short-term medical leave plan. Dkt. # 23-3 at 47.

time she requested short-term medical leave dating back to April 30th.  Dkt. # 23-3 at 45, 47, 49.  On May 22nd, Matrix informed Ms. McMillan that because medical certification must be submitted within 15 days of the date of the claimed disability, and because Ms. McMillan had not reported her claim until May 21st, her benefits would be suspended.  *Id.* at 49–50.

On June 15, 2009, Matrix notified Ms. McMillan that it had received additional information from ARNP Carmichael,[3] but that the information showed that Ms. McMillan had visited Carmichael only on May 1st, and had no further visits scheduled.  *Id.* at 52.  Matrix therefore found that it had insufficient information to support a short-term medical leave of absence, and denied Ms. McMillan's benefits effective June 15th.  *Id.* at 52.  Ms. McMillan submitted additional medical records to Matrix, but on July 7th, Matrix informed her that "[t]he medical records do not objectively support a lack of functional capability to perform your essential job functions" and thus continued the denial of her benefits.  *Id.* at 55.

On July 15th, Jada Malone, Senior Manager of Employee Relations at Abbott, sent Ms. McMillan a letter and email stating that Abbott had received from Matrix the denial of Ms. McMillan's claim, and thus she was currently on an unapproved leave of absence.  *Id.* at 21, 57.  Ms. Malone informed Ms. McMillan that her options were to either (1) return to work by July 20, 2009; (2) take a family leave of absence, if eligible; or (3) request a personal leave of absence.  *Id.* at 57.  The letter and email directed Ms. McMillan to contact Mr. Benedict or Ms. Malone by July 17th, to discuss her options, or she would be considered to have abandoned her job.  *Id.* at 21, 57.

Ms. McMillan did not contact either Mr. Benedict or Ms. Malone regarding her options for returning to work.  *See* Dkt. # 23 at 96 (McMillan Dep. 360:23–361:9).  On

---

[3] The letter incorrectly refers to ARNP Carmichael as "Dr. Carmichael."  Dkt. # 23-3 at 52.

July 21st, Ms. Malone sent Ms. McMillan an email stating that because neither Ms. Malone nor Mr. Benedict had heard from Ms. McMillan, they were moving forward with her separation from Abbott effective immediately. Dkt. # 23-3 at 18. On September 1st, Ms. McMillan elected to begin receiving retirement benefits, to commence on September 30th. Dkt. # 23-5 at 112–13. In January 2010 Abbott hired Joni Campbell (then age 39) to take over Ms. McMillan's former sales territory. *Id.* at 110 ¶ 11; Dkt. # 24-11 at 5 (Campbell Dep. 18:6–9, 18–21).

At some point after she went on leave, Ms. McMillan "was given the phone number of a district manager in New Jersey by a colleague who said she may have helpful information." Dkt. # 29 ¶ 24. Ms. McMillan contacted the district manager, June Zanvardine. *Id.* Ms. Zanvardine reported that in 2007, Duncan Williams became Vice President of Marketing and Sales at Abbott Diabetes Care. In meetings and in her presence "[o]n several occasions," Mr. Williams "ranted about getting rid of the old wood" and discussed getting rid of employees on disability leave. Dkt. # 28 (Zanvardine Dec.[4]) ¶ 2. According to Ms. Zanvardine, Mr. Williams "referenced sales people on disability telling us that our job was to get them out the door" and "said we were to ride with them, bulldog them, write them up, put them on a performance improvement plan."[5] *Id.* Ms. Zanvardine does not assert that Ms. Forrest or Mr. Benedict were present at any of these meetings. *See generally* Dkt. # 28.

Ms. McMillan filed the current action on September 27, 2010. Dkt. # 1 at 10.

---

[4] Much of Ms. Zanvardine's declaration contains assertions for which she does not establish personal knowledge; e.g., that a human resources manager told Ms. Zanvardine "that the V.P. of Human Resources at [Abbott Diabetes Care] had cautioned [Mr. Williams] about the use of such discriminatory language." Dkt. # 28 ¶ 3. The court considers only the portions of Ms. Zanvardine's declaration that are based on personal knowledge. *See* Fed. R. Civ. P. 56(c)(4).

[5] Defendants argue that this portion of the declaration should be stricken as inadmissible hearsay. Dkt. # 35 at 16. However, as an employee of Abbott, statements made by Mr. Williams "on a matter within the scope of [the employer-employee] relationship" are admissible as an admission of party opponent. *See* F.R.E. 801(d)(2)(D).

### III. ANALYSIS

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). On an issue where the non-moving party will bear the burden of proof at trial, the moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the non-moving party's case. *Celotex Corp.*, 477 U.S. at 325. If the moving party meets the initial burden, the opposing party must set forth specific facts showing that there is a genuine issue of fact for trial in order to defeat the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150–51 (2000).

**A.    Plaintiff's Discrimination Claim**

Plaintiff alleges in her complaint that "Defendant's [sic] acts . . . constitute age discrimination under the Washington Law Against Discrimination, RCW 49.60." Dkt. # 1 at 15. RCW 49.60 provides causes of action both for wrongful termination and disparate treatment. *See* RCW 49.60.180(2) (wrongful termination); 49.60.180(3) (disparate treatment). After a year and a half of discovery and depositions, Defendants were apparently under the impression that Plaintiff was asserting a constructive discharge claim. *See* Dkt. # 22. However, Plaintiff clarified in her opposition to Defendants' motion for summary judgment that she is in fact alleging a disparate treatment claim. Dkt. # 25 at 18. She emphasizes that she "has not presented a cause of action for

1  wrongful discharge, constructive discharge, or termination in violation of RCW 49.60."
2  *Id.* at 19.
3      Additionally, Plaintiff makes numerous allegations regarding Mr. Benedict's
4  harassment, verbal abuse, and threats. *See generally* Dkt. # 25. However, she did not
5  identify a hostile work environment cause of action in her complaint, nor did she argue in
6  her briefing that her discrimination claim is a hostile work environment claim. *See id.*;
7  Dkt. # 1. Nonetheless, at oral argument Plaintiff clarified that she did in fact intend to set
8  forth a hostile work environment cause of action, and thus the court will address both
9  claims.

10  **B.   WLAD - Disparate Treatment**
11      The WLAD makes it an unlawful practice "[t]o discriminate against any person in
12  compensation or in other terms or conditions of employment because of age." RCW
13  49.60.180(3). Because Title VII of the Civil Rights Act of 1964 was the model for RCW
14  49.60, courts turn to decisions interpreting the federal provision when analyzing a claim
15  under the WLAD. *Xieng v. Peoples Nat. Bank of Washington*, 120 Wn.2d 512, 518
16  (1993) (citing *Oliver v. Pacific Northwest Bell Tel. Co.*, 106 Wn.2d 675, 678 (1986)). If
17  a plaintiff sets forth a prima facie case for discrimination, but does so via circumstantial
18  or indirect evidence, the court will employ the burden-shifting analysis set forth in
19  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Hill v. BCTI Income Fund-I*,
20  144 Wn.2d 172, 179–80 (2001); *see also id*. at 179–87 (thoroughly explicating
21  *McDonnell Douglas* analysis). Under the *McDonnell Douglas* framework, once the
22  plaintiff makes the prima facie showing, the burden shifts to the defendant to produce
23  evidence that the reason for the disparate treatment was non-discriminatory. *See id.* at
24  179–80; *Johnson v. Dep't of Soc. & Health Servs.*, 80 Wn. App. 212, 226–27 (1996). If
25  the defendant meets this burden of production, the burden then shifts back to the plaintiff
26  to demonstrate that the reason or reasons proffered by the defendant are pretext. *Id.* at
27

227. The plaintiff bears the ultimate burden of persuading the fact finder that his or her protected status was a "substantial factor" in the disparate treatment. *Mackay v. Acorn Custom Cabinetry, Inc.*, 127 Wn.2d 302, 310 (1995).

Plaintiff states that "[t]he Zanvardine declaration provides direct evidence of discrimination, which eliminates the need for a burden shifting analysis." Dkt. # 25 at 20. Yet she does not elaborate on this one-sentence argument. *See id.* Instead, she devotes the "legal argument" section of her opposition primarily to applying the *McDonnell Douglas* framework. Dkt. # 25 at 16 ("Plaintiff's disparate treatment claim is subject to the burden shifting analysis of *McDonnell Douglas* . . . ."), 18–23.

Assuming, however, that Plaintiff has properly set forth a "direct evidence" argument, the court finds that it fails. Where a plaintiff cites discriminatory statements as evidence of an employer's intent, the plaintiff must also demonstrate a nexus between the statements and the alleged adverse employment action. *See Ferguson v. Wal-Mart Stores, Inc.*, 114 F. Supp. 2d 1057, 1064 (E.D. Wash. 2000); *see also Nesbit v. Pepsico, Inc.*, 994 F.2d 703, 705 (9th Cir. 1993) (finding that Senior Vice President of Personnel's remark that "[w]e don't want unpromotable fifty-year olds around" was "very general and did not relate in any way, directly or indirectly, to the terminations of [plaintiffs]"). Ms. Zanvardine's declaration, even construed in the light most favorable to Plaintiff, does not demonstrate a connection between Mr. Williams's remarks regarding "getting rid of the old wood" and the treatment of Ms. McMillan. *See generally* Dkt. # 28. As the Ninth Circuit found in *Nesbit*, these remarks are "at best weak circumstantial evidence of discriminatory animus toward [Plaintiff]." 994 F.3d at 705. Plaintiff has failed to put forth direct evidence of discrimination. The court therefore applies the *McDonnell Douglas* framework.

A disparate treatment claim requires a plaintiff to make a prima facie showing that "'(1) she belongs to a protected class, (2) she was performing according to her employer's legitimate expectations, (3) she suffered an adverse employment action, and

(4) other employees with qualifications similar to her own were treated more favorably.'"[6] *Carter-Miller v. Washington*, Case No. C07-1825-RAJ, 2008 WL 4542372, at *9 (W.D. Wash. Oct. 8, 2008) (quoting *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1220 (9th Cir. 1998)). Defendants concede that Plaintiff is in a protected class, *see* Dkt. # 35 at 5, and the parties dispute whether Plaintiff was performing to Defendants' legitimate expectations, Dkt. ## 22 at 15; 25 at 22. The court therefore turns to the third and fourth elements, as they are dispositive.

1. Adverse Employment Action

Defendants argue that Plaintiff has failed to establish this factor because she has not shown that "Abbott decreased her salary; took away any of her benefits; diminished her job responsibilities; failed to promote her; or demoted her." *Id.* at 6. Defendants rely on *Kirby v. City of Tacoma*, 124 Wn. App. 454, 465 (2004), where the Washington Court of Appeals favorably cited federal case law holding that "[a]n actionable adverse employment action must involve a change in employment conditions that is more than an 'inconvenience or alteration of job responsibilities.'" 124 Wn. App. at 465 (citing *DeGuisseppe v. Vill. of Bellwood*, 68 F.3d 187, 192 (7th Cir. 1995)).

Although not exactly a model of clarity, in her opposition Plaintiff identified the following as the terms and conditions of employment that were negatively affected: (1) the requirement that she "use the display case and other illustrative sales tools on every call"; (2) criticism of her sales performance as evidenced in her placement on the PIP; and (3) the fact that her sales territory included Alaska.[7] Dkt. # 25 at 11–13.[8] Plaintiff

---

[6] Plaintiff objected to the second element at oral argument, but was unable to cite any contrary authority.

[7] Plaintiff also states that she was the target of "verbal abuse and threats" by Mr. Benedict, and references this "intentional harassment." Dkt. ## 25 at 24; 29 ¶ 22. These allegations appear to relate more to Plaintiff's hostile work environment claim.

[8] Additionally, at oral argument Plaintiff stated that the most important factor was that Ms. Forrest "falsified" the field travel coaching form she completed regarding Plaintiff's sales performance. However, the record does not support this allegation. Plaintiff argues that Ms.

1 cites no authority for the proposition that any of these constitute adverse employment
2 actions.  However, at oral argument Plaintiff contended (again without citing any
3 authority) that the court should look at the totality of the circumstances.  The court finds
4 that Plaintiff's arguments fail either way.

5       An adverse employment action within the context of a disparate treatment claim is
6 an action that "materially affect[s] the compensation, conditions, or privileges
7 of . . . employment."  *See Chuang v. Univ. of Cal. Davis, Bd. of Trustees*, 225 F.3d 1115,
8 1126 (9th Cir. 2000); *see also Carter-Miller*, 2008 WL 4542372, at *9.  Although
9 unwarranted performance reviews may constitute adverse employment actions where
10 such reviews lead to negative consequences, mere criticism without more is insufficient.
11 *See Kortan v. Cal. Youth Auth.*, 217 F.3d 1104, 1113 (9th Cir. 2000); *Hutchinson v.*
12 *Seagate Tech., LLC*, Case No. C02-05763-JF, 2004 WL 1753391, at *9–10 (N.D. Cal.
13 Aug. 3, 2004).  In *Kortan*, the Ninth Circuit noted that "[Plaintiff] was not demoted, was
14 not stripped of work responsibilities, was not handed different or more burdensome work
15 responsibilities, was not fired or suspended, was not denied any raises, and was not
16 reduced in salary or in any other benefit.  Thus, [Plaintiff] has not shown that her
17 evaluation was discriminatory or retaliatory, or was such an 'intolerable' act that it would
18 force an employee to quit."  217 F.2d at 1113.  In the instant case, just as in *Kortan*,
19 Plaintiff has not articulated a tangible, negative change in the terms and conditions of her
20 employment resulting from the negative performance reviews and placement on the PIP.

21 ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

22 Forrest falsely reported that Plaintiff "did not sell."  *See* Dkt. # 23-2 at 13.  Yet Plaintiff
conceded in her declaration that she "obtained a *commitment* that would place [Abbott's] product
23 into Children's Hospital Diabetes Clinic and the hospital pharmacy for the *first time ever*."  Dkt.
# 29 ¶ 15 (emphasis in original).  Although Plaintiff characterizes this as a "sale" in her
24 declaration, at her January 2011 deposition she did not dispute the assertion that she "didn't close
25 on any particular sales that day."  *Id.*; Dkt. # 23 at 50 (McMillan Dep. at 178:16–17); *see*
*generally* Dkt. # 23 at 49–50 (176:3–181:6).  Even taking these facts in the light most favorable
26 to the Plaintiff, there is no support for Plaintiff's argument that Ms. Forrest "falsified" the field
travel coaching form.
27

Although the Ninth Circuit has not expressly found that a totality of the circumstances analysis applies to disparate treatment claims, neither has it held otherwise. *See Velez v. Roche*, 335 F. Supp. 2d 1022, 1035 (N.D. Cal. 2004). However, the circuits that have considered the issue have found that a totality of the circumstances analysis appropriate. *See id.* at 1035–36 (listing cases from the First, Sixth, and Seventh Circuits). Under such analysis, the aggregate conduct must still "rise to the level of a 'significant change in employment status.'" *Id.* at 1036. Here, considering the aggregate conduct alleged (including Mr. Benedict's alleged harassing behavior), Plaintiff has failed to demonstrate that Defendants' actions resulted in a significant change in her employment status. *See, e.g.*, *id.* ("'An adverse employment action constitutes a significant change in employment status, such as firing, failing to promote, significantly diminished material responsibilities, reassignment with significantly different responsibilities, undesirable reassignment, or a decision causing a significant change in benefits.'") (quoting with approval jury instruction at issue in case). Plaintiff has thus failed to establish that she was subjected to an adverse employment action.

2. <u>Treated Less Favorably Than Similarly Situated Employee</u>

Even if the court were to find an adverse employment action, Plaintiff has failed to demonstrate that employees with similar qualifications were treated more favorably. Plaintiff alleges that her younger replacement, Ms. Campbell, was not put on a PIP when her sales performance was in the bottom six percent. Dkt. # 25 at 12–13. However, Plaintiff has not adequately demonstrated that Ms. Campbell is sufficiently comparable. This court has previously held that "the 'similarly situated' analysis is stringent." *Blair v. Alaskan Copper & Brass Co.*, Case No. C07-1877-RAJ, 2009 WL 2029963, at *7 (W.D. Wash. July 10, 2009). In order to prevent the courts from "second-guessing" a reasonable employment decision, "[t]he comparator must be nearly identical to the plaintiff." *Id.* (quoting *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079 (11th Cir. 2004)). Plaintiff concedes that when Ms. Campbell's sales ranking was low, she was in her first

year with Abbott. Dkt. # 25 at 12. Abbott contends that it has different expectations for new employees, *see* Dkt. # 23-4 at 33 (Benedict Dep. 85:12–17), and nowhere does Plaintiff dispute this fact. Plaintiff also concedes that Ms. Campbell had no prior experience selling diabetes products, and thus Plaintiff cannot demonstrate that her qualifications were similar. Dkt. # 25 at 12; *see Blair*, 2009 WL 2029963, at *7. Plaintiff has thus failed to demonstrate that a similarly situated employee was treated more favorably than she.[9] Having failed to establish even a prima facie case of disparate treatment, Plaintiff's claim fails as a matter of law.

## C. WLAD - Hostile Work Environment Claim

The words "hostile work environment" appear nowhere in Plaintiff's complaint or in her opposition. *See* Dkt. ## 1; 25. However, at oral argument she contended that she plead her WLAD claim broadly, intending to encompass both disparate treatment and hostile work environment. The court is skeptical. The elements of a hostile work environment claim are separate and distinct from a disparate treatment claim, and Plaintiff never addresses the former in her opposition. *See* Dkt. # 25; *Glasgow v. Georgia-Pacific Corp.*, 103 Wn.2d 401, 406–07 (1985); *Daniel v. Boeing Co.*, 764 F.

---

[9] Plaintiff also identifies former Abbott employees Chris Ward and Robert Volodkevich, asking this court to consider the ways in which Defendant treated them. Dkt. # 25 at 13–14. With regard to the younger Mr. Ward, Plaintiff argued in her briefing that although he, too, was put on a PIP, he "was quickly taken off the PIP when his sales rank improved." Dkt. # 25 at 14. However, at oral argument Plaintiff conceded that no facts supported the assertion that Mr. Ward's PIP ended quickly. Additionally, Plaintiff contends that Mr. Volodkevich, an older employee, suffered the same mistreatment that she did. *Id.* at 13. She asserts that Mr. Volodkevich is over 50 years of age, that Abbott eliminated his sales territory and divided it among younger employees, and that this cost Mr. Volodkevich his job. *Id.* at 13–14. However, she provides no facts demonstrating that Mr. Volodkevich's departure from Abbott was involuntary, or that the circumstances surrounding the elimination of his territory were otherwise objectionable. Additionally, Plaintiff has failed to provide the page from Mr. Benedict's deposition in which he purportedly stated that the territory was divided among younger employees, and the court has been unable to locate this evidence. Dkt. # 24-15 at 7–8 (Benedict Dep. 23, 25). The court therefore finds no factual basis for the allegations Plaintiff makes regarding Mr. Volodkevich.

Supp. 2d 1233, 1245 (W.D. Wash. 2011). Additionally, both the three-year statute of limitations and the time for amending the complaint have passed. *See* RCW 4.16.080(2) (statute of limitations); Dkt. # 20 ("Amended Pleadings due by 3/14/2012"); *see also Raines v. Seattle Sch. Dist. No. 1*, Case No. C09-203-TSZ, 2013 WL 496199, at *2 (W.D. Wash. 2013). Thus, it is too late for Plaintiff to now assert a hostile work environment claim. Even if the court were to find that such claim is not barred procedurally, it would still fail substantively.

The elements of a hostile work environment claim are: (1) the conduct was unwelcome; (2) the conduct was motivated by a protected characteristic; (3) the conduct was sufficiently pervasive so as to alter the terms or conditions of employment and create an abusive working environment; and (4) the harassment can be imputed to the employer. *See Glasgow*, 103 Wn.2d at 406–07. Defendants argue that Plaintiff cannot establish the second, third, or fourth elements.

The court addresses the fourth factor first, as it is dispositive. Under the WLAD, an employer-defendant is liable for harassing conduct committed by a supervisor if the plaintiff can demonstrate that the employer "(a) authorized, knew, or should have known of the harassment and (b) failed to take reasonably prompt and adequate corrective action."[10] *Id.* at 407. A plaintiff may make the showing required in the first prong by

---

[10] The analysis under Title VII is slightly different. Under the federal framework, an employer is generally liable for the harassing conduct of a supervisor. *See Nichols v. Azteca Restaurant Enters., Inc.*, 256 F.3d 864, 877 (9th Cir. 2001). However, where a plaintiff alleges that a supervisor created a hostile work environment, but no "tangible employment action" took place, the employer may assert an affirmative defense to the claim. *Id.* (citation omitted). The affirmative defense requires the employer to demonstrate both "'that the employer exercised reasonable care to prevent and correct promptly any . . . harassing behavior,'" and "'that the plaintiff unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer or to avoid harm otherwise.'" *Id.* (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998)). The Washington State Court of Appeals adopted this affirmative defense framework for WLAD claims in 2000, pointing out that in *Glasgow* the court relied on Title VII cases, and that since *Glasgow* was decided, the United States Supreme Court clarified the federal law on the employer liability issue. *Sangster v. Albertson's, Inc.*, 99 Wn.

proving that she made complaints to upper management or higher supervisory personnel, "or by proving such a pervasiveness of . . . harassment at the work place as to create an inference of the employer's knowledge or constructive knowledge of it." *Id.*

Defendants assert that Plaintiff failed to report the alleged harassment to anyone at Abbott, and argue that her claim thus fails. Dkt. # 35 at 15. Plaintiff conceded at her deposition that she did not report Mr. Benedict's behavior to Abbott's human resources or office of ethics and compliance departments. Dkt. 23 at 77–78 (McMillan Dep. 285:21–286:6). She does not claim that she reported this behavior to anyone else at Abbott. Plaintiff testified in her deposition that she did not report the behavior because "[i]n about 2006, 2007 there were several reps in Southern California that felt their manager was being extremely inappropriate . . . and they as a group went to Abbott HR and they – their concerns weren't addressed at all and those reps are now gone." *Id.* at 78 (286:9–13). However, Plaintiff did not know who at HR the "reps" had talked to, whether the allegations were related to age or gender, or whether any investigation had been done. *Id.* (286:14–287:9). Additionally, Plaintiff cites no authority for the proposition that her purported fear of retaliation under these circumstances is adequate to relieve her of the required showing under the fourth prong of the *Glasgow* test. Because Mr. Benedict's conduct cannot be imputed to Defendants, Plaintiff's hostile work environment claim fails.

## IV. CONCLUSION

For all the foregoing reasons, the court GRANTS Defendants' motion for summary judgment. The clerk of court is DIRECTED to enter judgment in favor of Defendants.

---

App. 156, 164–65 (2000) (citing *Burlington Indus.*, 524 U.S. 742). However, the Washington Supreme Court has not re-addressed this issue and thus the court continues to follow *Glasgow*, though the court notes that under either framework the result in the instant case would be the same.

1 | Dated this 13th day of March, 2013.

*Richard A. Jones* (signature)

The Honorable Richard A. Jones
United States District Judge